925 F.2d 489
 288 U.S.App.D.C. 258
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Chayfa B. KIRKLAND, Petitioner,
v.
DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, and Air America, Inc.,
Respondents.
 No. 90-1267.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 7, 1991.
 
 Ben.Rev.Bd.
 DECISION AFFIRMED.
 Before MIKVA, Chief Judge, and HARRY T. EDWARDS and CLARENCE THOMAS, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 This appeal was considered on the proceedings before the Benefits Review Board of the Department of Labor, Chayfa B. Kirkland v. Air America, Inc., BRB No. 85-2425 (Ben.Rev.Bd., April 30, 1990), on the record from proceedings before the Administrative Law Judge, Chayfa B. Kirkland v. Air America, Inc., No. 79-LHCA-320 (Decision and Order of Administrative Law Judge William A. Gershuny, June 27, 1983), and from the briefs filed by the parties and the arguments by counsel. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the attached memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review be denied, and the decision of the Benefits Review Board denying petitioner benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq. (1988), be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Petitioner, Chayfa B. Kirkland, claims that she is entitled to benefits for the 1973 murder of her husband in Vientiane, Laos. Upon careful review of the record in this case, we find that petitioner's claims are wholly without merit. It is clear that both the Administrative Law Judge ("ALJ") and the Benefits Review Board ("Board") properly denied petitioner's request for benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq. (1988) ("Act"). We deny the petition for review because we find that substantial evidence more than amply supports the ALJ's findings. See Stark v. Washington Star Co., 833 F.2d 1025, 1026-27 (D.C.Cir.1987).[1]
 
 I.
 
 5
 The ALJ correctly concluded that George C. Kirkland (hereinafter "Kirkland"), petitioner's husband, was not murdered "because of his employment." Therefore, there was no compensable injury. Under the Act, a claimant may receive compensation only in the event of a specified injury or death; thus, a compensable "injury" is limited to an:
 
 
 6
 accidental injury arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.
 
 
 7
 33 U.S.C. Sec. 902(2) (emphasis supplied). Because Kirkland was killed by the willful act of a third person, the critical question in this case is whether Kirkland was murdered "because of his employment." See Maryland Casualty Co. v. Cardillo, 107 F.2d 959, 961 (D.C.Cir.1939).
 
 
 8
 On the record at hand, there is absolutely no basis for us reasonably to question the ALJ's finding that Kirkland was not killed "because of his employment." Indeed, there is more than substantial evidence to uphold this finding. Kirkland worked as an administrative assistant for Air America, Inc., a company which provided air support for Central Intelligence Agency ("CIA") operations in Southeast Asia. See Appendix ("App.") 834; see also App. 193-245. However, Kirkland was murdered by thieves when he awoke while they were robbing his home.[2] Supplemental Appendix ("Supp.App.") 35, 38. His assailants confessed that their motive was robbery, Supp.App. 35, and the stolen goods were discovered in the assailants' homes, App. 1355, Supp.App. 35. In short, the evidence before the ALJ showed no credible connection between the robbery and murder and Kirkland's employment.
 
 
 9
 The decedent in this case is much like the decedent in Trans-Asia Eng'g Assocs., Inc. v. Reichart, BRB No. 101-73 (Ben.Rev.Bd., June 25, 1973) (slip op.), who, while working outside of the United States, was murdered by his jealous mistress. In that case, the Board refused to find that the decedent was killed because of his employment because such a finding would "nullify the statutory language and make employers ... absolute guarantors for injuries or death under any circumstances arising from the time [employees] leave the shores of the United States until they returned." Id., slip op. at 10. Similarly, we cannot say that the ALJ erred when he concluded that Kirkland was killed during the course of a robbery, and not because of his employment. Nothing regarding Kirkland's employment as "an administrative assistant who prepared leave requests ... and handled pilot problems," App. 834, caused him to be murdered while being robbed by his wife's friend.
 
 
 10
 Furthermore, substantial evidence supports the ALJ's decision to reject petitioner's somewhat extraordinary claim--first advanced more than four years after the murder--that Kirkland was killed by a disgruntled job applicant. First, Kirkland was not involved in the hiring of employees. App. 1384. Second, there was no evidence that Khamphay, the supposed job applicant turned killer, ever filed a job application. App. 1500. Finally, in his confession to the murder, Khamphay indicated only that his motive was robbery, not that he was a disgruntled job applicant seeking revenge. App. 1371-72. The only "evidence" in support of petitioner's claim is her own uncorroborated testimony, which the ALJ found not to be credible. See Chayfa B. Kirkland v. Air America, Inc., No. 79-LHCA-320 (Decision and Order of ALJ William A. Gershuny, June 27, 1983), slip op. at 2 n. 1; see also infra n. 3.
 
 II.
 
 11
 In an apparent last-ditch effort to salvage a patently meritless case, petitioner urges us to apply a "zone of special danger" test to establish some nexus between Kirkland's employment and his death. Under this doctrine, an accidental injury or death may be found to have arisen out of or been in the course of employment for purposes of the Act when "the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 506, 507 (1951) (citation omitted). The Board has held that the "zone of special danger" test does not extend to willful killings, see Reichart, slip op. at 9, and, on the facts of this case, we see no reason to reach a different conclusion.
 
 
 12
 Petitioner's reliance on Hartford Accident & Indem. v. Hoage, 85 F.2d 417, 418 (D.C.Cir.1936), and Hartford Accident & Indem. v. Cardillo, 112 F.2d 11, 14 (D.C.Cir.), cert. denied, 310 U.S. 649 (1940), is clearly misplaced. In each of these cases, the court found only that the disputed injuries arose out of and in the course of employment; the court never went on to consider whether the injuries were "directed against an employee because of his employment." More importantly, in both Hoage and Cardillo, the claimants' injuries were suffered while they were on the job; no such situation exists in this case.
 
 
 13
 In any event, even if we were to apply the "zone of special danger" test, we would find that substantial evidence supports the ALJ's conclusion that Vientiane, Laos, the city in which Kirkland lived and worked, was not a "zone of special danger" for purposes of the Act. The record indicates that at the time of the murder, Vientiane was a "very nice, very pleasant place to live." App. 73. The U.S. Consul referred to Vientiane as "[o]ne of the nicest places I lived. In the foreign service we call it the best kept secret in the foreign service." App. 73. There was no high incidence of attacks on Americans, App. 76-77, and the city was not considered dangerous. App. 76. Beyond petitioner's assertion that Air America, Kirkland's employer, provided air support for CIA operations in Southeast Asia during United States efforts to rebuff the tide of communism, petitioner introduced no credible evidence indicating that life in Vientiane was inherently dangerous. Thus, even were we to apply a "zone of special danger" test, we would agree with the ALJ's finding that Vientiane was not uniquely dangerous as a place to work.
 
 
 14
 At oral argument, petitioner took the position that an employer such as Air America, which engages in covert operations in a foreign nation on behalf of the United States Government, should be absolutely liable under the Act for all injuries sustained by its employees regardless of the circumstances. Petitioner could cite no authority in support of this view, and we can discern no basis upon which to embrace such an unwarranted extension of existing law.
 
 III.
 
 15
 We also have no difficulty in concluding that substantial evidence supports the ALJ's finding that petitioner was a knowing participant in the criminal activity that led to her husband's death, and, as such, is ineligible for benefits under the Act. The ALJ correctly applied the preponderance-of-the-evidence standard in reaching this conclusion. See Steadman v. SEC, 450 U.S. 91, 101-102 (1981).
 
 
 16
 The record demonstrates that petitioner engaged in a variety of suspicious activities on the evening of her husband's murder. She prepared his evening drink, even though the houseboy usually did so. Supp.App. 34. She locked up their guard dog, even though the dog usually was allowed to roam around the house. App. 1345-46. In addition, petitioner had had many clandestine meetings with Khamphay, one of the assailants. App. 1354-55, Supp.App. 35. Most importantly, after his arrest, Khamphay confessed that he had robbed the house with the assistance of petitioner, that she had agreed to lock up the dog and drug her husband, and that he had tied petitioner up to make it appear that she was not a co-conspirator. App. 1356-57, 1371-72.
 
 
 17
 Given that petitioner presented no evidence beyond her own uncorroborated and incredible testimony,[3] we find that substantial evidence supports the ALJ's conclusion that petitioner was a knowing participant in the robbery which led to Kirkland's murder. Accordingly, it would be improper for her to recover compensation under the Act for his death. See, e.g., Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 600 (1886) ("It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life [s]he had feloniously taken.").
 
 
 18
 Because petitioner's claims are wholly devoid of merit, we deny her petition for review.
 
 
 
 [1]
 In considering this appeal, we have focused on the decision of the ALJ, as well as the judgment of the Board. See Kalaris v. Donovan, 697 F.2d 376, 383 (D.C.Cir.) ("the Board screens cases ... and apparently reduces the number of cases that will be taken to the Courts of Appeals; its review function ... is duplicated in those cases that actually do advance to the Court of Appeals"), cert. denied, 462 U.S. 1119 (1983); see also Hawthorne v. Director, O.W.C.P., 844 F.2d 318, 319 (6th Cir.1988)
 
 
 [2]
 The ALJ found that at least one of the assailants, Khamphay, was petitioner's boy-friend and had been visiting her when Kirkland was not at home. App. 1354-55, Supp.App. 35
 
 
 [3]
 The record amply supports the ALJ's finding that petitioner was not a credible witness. For example, although she had told police that she locked the dog in the houseboy's room because it was scratching at the bedroom door, App. 1346, she testified at trial that the houseboy had locked up the dog, App. 602, and that he had done so because the dog might jump on their guests. App. 475. Although she testified that she attempted suicide on the night following her husband's murder, App. 488-89, she could not recall whether she attempted the suicide before or after the police took her to the police station. App. 668. Before trial, she testified that she attempted suicide by hanging herself, App. 965-66, but at trial she testified that she had attempted suicide by taking a pill. App. 964. Absent any evidence to the contrary, we cannot disregard the credibility determinations of the ALJ. See Director, O.W.C.P. v. Brandt Airflex Corp., 645 F.2d 1053, 1057 (D.C.Cir.1981)