# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 12, 2012

No. 10-20202 c/w 10-20371

Lyle W. Cayce
Clerk

INGRID FISHER, Individually and as Successor in Interest to Decedent Steven Fisher; KRISTEN FISHER, Individually and as Successor in Interest to Decedent Steven Fisher; S. F., JR., a Minor, Individually and as Successor in Interest to Decedent Steven Fisher by and through Next Friend Ingrid Fisher; K. F., a Minor Individually and as Successor in Interest to Decedent, Steven Fisher, by and through Next Friend Ingrid Fisher; MARJORIE BELL-SMITH, Individually and as Successor in Interest to Decedent Timothy Bell; ET AL,

Plaintiffs–Appellees,

v.

HALLIBURTON, a Corporation; KELLOGG BROWN & ROOT INCORPORATED, a Corporation and Wholly Owned Subsidiary of Halliburton and KBR Holdings Limited Liability Company; SERVICE EMPLOYEES INTERNATIONAL INCORPORATED, a Foreign Corporation and Wholly Owned Subsidiary of Halliburton and Kellogg Brown & Root International Incorporated; BROWN & ROOT SERVICES, a Division of Kellogg Brown & Root Incorporated, a Corporation; KELLOGG BROWN & ROOT SERVICES INCORPORATED,

Defendants–Appellants.

-------------------------------------------------------------------------------------------------------------

REGINALD CECIL LANE, an individual, by and through Linda Marlene Lane, as the duly appointed Conservator/Guardian of Reginald Cecil Lane; ET AL,

Plaintiffs,

v.

No. 10-20202 c/w 10-20371

HALLIBURTON, a Corporation; ET AL,

                                        Defendants.

Consolidated with No. 10-20371

INGRID FISHER, Individually and as Successor in Interest to Decedent Steven Fisher; KRISTEN FISHER, Individually and as Successor in Interest to Decedent Steven Fisher; S. F., JR., Individually and as Successor in Interest to Decedent Steven Fisher; K. F., Individually and as Successor in Interest to Decedent Steven Fisher; MARJORIE BELL-SMITH, Individually and as Successor in Interest to Decedent Steven Fisher; ET AL, Individually and as Successor in Interest to Decedent Steven Fisher,

                                        Plaintiffs–Appellees
                                        Cross-Appellants,

v.

HALLIBURTON, a Corporation; KELLOGG BROWN & ROOT INC, a Corporation; SERVICE EMPLOYEES INTERNATIONAL INC, a Corporation; KELLOGG BROWN & ROOT SERVICES INC, a Corporation; BROWN & ROOT SERVICES CORP, a Corporation,

                                        Defendants–Appellants
                                        Cross-Appellees.

------------------------------------------------------------------------------------------------------------------

REGINALD CECIL LANE, an Individual, by and through Linda Marlene Lane, as the duly appointed Conservator/Guardian of Reginald Cecil Lane; ET AL,

                                        Plaintiffs,

v.

HALLIBURTON, a Corporation; ET AL,

                                        Defendants.

2

No. 10-20202 c/w 10-20371

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

This interlocutory appeal arises out of the deaths of Steven Fisher and Timothy Bell, who were civilian drivers in a United States military supply-truck convoy in Iraq when insurgents attacked in April 2004. State tort claims were brought by or on behalf of spouses and family members of the decedents (collectively Plaintiffs) against Halliburton, Kellogg Brown & Root, Inc., and various subsidiaries or affiliates (collectively KBR), who employed the decedents. In this appeal, KBR contends that the district court erred in denying KBR's motion to dismiss and motion for summary judgment in which it argued that the Defense Base Act (the DBA or Act)[1] provides Plaintiffs' exclusive remedy and preempts all state tort claims that have been asserted. The district court certified its order regarding the DBA for immediate appeal under 28 U.S.C. § 1292(b). KBR also seeks review of interlocutory orders denying motions to dismiss that had asserted that this case concerns a political question and is nonjusticiable and had asserted the government contractor defense and combatant activities exception. We conclude that the DBA preempts Plaintiffs' claims, and we therefore do not consider whether we have jurisdiction to entertain the alternative grounds on which KBR seeks dismissal.

**I**

---

[1] 42 U.S.C. §§ 1651-54.

No. 10-20202 c/w 10-20371

In the district court, this case was considered with another case, *Lane v. Halliburton*, which arose out of injuries sustained by another KBR employee, Reginald Cecil Lane, who was attacked the same day in Iraq while driving a truck in a supply convoy. Lane was joined in his suit against KBR by his guardian and conservator and the representative of the estate of a family member. The district court's order ruling that the DBA did not apply was entered in both cases, and this interlocutory appeal originally included the *Fisher* as well as the *Lane* plaintiffs. The plaintiffs in *Lane* reached a settlement agreement with KBR while this appeal was pending, and the appeal has been dismissed as to all the *Lane* plaintiffs. The *Fisher* claims remain pending.

We have previously considered an appeal in this case, *Lane v. Halliburton*.[2] We again recount the pertinent facts.

In December 2001, the United States Army awarded KBR a contract pursuant to its Logistics Civil Augmentation Program (LOGCAP). As we explained in the prior appeal before this court: "Under LOGCAP, the Army is authorized to employ 'civilian contractors to perform selected services in wartime to augment Army forces.' U.S. Army Reg. 700-137, at 1-1 (Dec. 16, 1985)."[3] Contracts under LOGCAP "allow the Army to 'achieve the maximum combat potential . . . by capitalizing on the civilian sector . . . .' *Id.* at 2-1(a)."[4] Under its contract with the Army, known as the LOGCAP III contract, and task orders issued subsequent to the contract, KBR was responsible for providing logistical support and transportation services to the Army as it conducted operations in Iraq.

---

[2] 529 F.3d 548 (5th Cir. 2008).

[3] *Id.* at 554.

[4] *Id.*; *see also Martin v. Halliburton*, 618 F.3d 476, 479-80 (5th Cir. 2010) (discussing the LOGCAP program).

No. 10-20202 c/w 10-20371

Pursuant to its responsibilities under the contract, KBR and its employees conducted supply convoy missions in Iraq under the supervision of the Army. Both the LOGCAP III contract and the task orders that defined KBR's responsibilities in Iraq provided that the Army would maintain responsibility for the safety of KBR convoys by providing adequate force protection for the convoys and ensuring the security of the routes on which the convoys would travel. In fulfilling its duties under the contract, the Army determined where commodities were needed, when and from where a convoy would deploy, the route the convoy would travel, the necessary force protection, and whether a specific route was too dangerous to travel. Despite the Army's significant role in the planning and operation of KBR convoys, KBR retained the authority to halt convoy operations unilaterally due to safety concerns.

The events giving rise to this litigation occurred primarily on April 9, 2004, in Iraq. The record includes evidence that KBR was on notice that April 9 was a day that would present an increased risk of insurgent violence and that KBR employees were concerned about the levels of violence that their convoys were facing. For example, KBR security calendars noted April 9, 2004, marked the first anniversary of the United States' presence in Baghdad, and the weekend of April 9 through April 11 coincided with a Shia commemorative event. On April 7, a KBR security manager e-mailed KBR's theater project manager and expressed his concern that convoys could face serious security risks on April 9 and 10. On April 8, several KBR convoys were attacked by insurgents, and internal KBR e-mails suggest KBR employees were aware the security situation with respect to their convoys had deteriorated. Some of the e-mails expressed doubt the military could adequately protect KBR convoys under current conditions, and KBR management, on the evening of April 8, debated the merits of sending out convoys on April 9. KBR ultimately resolved to continue convoy operations.

No. 10-20202 c/w 10-20371

The suit below focused on the drivers of fuel tankers in two separate supply convoys on April 9—the Hamill convoy and the Longstreet convoy. Both convoys were traveling between Camp Anaconda and Baghdad International Airport (BIAP) when they were attacked by Iraqi insurgents. Plaintiffs' convoys were not the only KBR convoys to suffer insurgent attacks that day. There is evidence in the record, for example, that, before the Hamill convoy had even departed Camp Anaconda on its mission to supply BIAP, other KBR convoys in the vicinity of the intersection of two supply routes—MSR Sword and MSR Tampa—were receiving small arms fire from insurgents. Internal KBR e-mails suggest that KBR executives who had authority to halt convoy operations were aware of these attacks before the Hamill convoy left Camp Anaconda.

The Hamill convoy ultimately proceeded from Camp Anaconda toward BIAP via MSR Sword. As the Hamill convoy was traveling down MSR Sword toward its intersection with MSR Tampa, insurgents attacked the convoy with improvised-explosive devices, rocket-propelled grenades, and machine-gun fire. The Longstreet convoy was en route from BIAP to Camp Anaconda on MSR Tampa when it, too, fell under attack by insurgents wielding rocket-propelled grenades, small arms, and rocks. The attacks killed seven KBR drivers and injured at least ten others. As a result of the attacks, KBR suspended its convoy operations for April 10.

Plaintiffs subsequently filed suit against KBR raising a number of claims, including negligence and fraud. Plaintiffs based their negligence claims primarily on their allegations that KBR, in its zeal to fulfill its role providing logistical support services to the United States military in Iraq, allowed Plaintiffs' convoys to proceed on these missions despite knowing insurgent attacks on the convoys were likely to occur.[5] The fraud claims, on the other

---

[5] *See Lane v. Halliburton*, 529 F.3d 548, 567 (5th Cir. 2008) (describing Plaintiffs' negligence claims).

6

No. 10-20202 c/w 10-20371

hand, were based primarily on Plaintiffs' allegations that KBR, during recruiting and orientation activities, intentionally misled the drivers into believing they would only be engaging in rebuilding activities, not combat.[6]

The district court dismissed Plaintiffs' suit after determining it was nonjusticiable pursuant to the political question doctrine.[7] Plaintiffs appealed, and our court reversed after concluding that "the case need[ed] further factual development before it can be known whether that doctrine is actually an impediment."[8] After these cases were remanded to the district court, the parties proceeded with discovery and refined their pleadings. The Fisher Plaintiffs' most recent complaint alleged several state-law causes of action against KBR:[9] (1) Fraud and Deceit, Fraud in the Inducement, Continuing Fraud, Intentional Concealment of Material Facts, and Negligent and Intentional Misrepresentations; (2) Negligence; (3) Civil Conspiracy; (4) Intentional Infliction of Emotional Distress; and (5) Intent to Injure/Assault.

KBR subsequently moved to dismiss Plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(1), arguing that the district court lacked subject-matter jurisdiction over the claims because the DBA provided Plaintiffs' exclusive remedy for their injuries. The district court treated the motion as a motion for summary judgment and denied it after determining genuine issues of material fact existed as to whether the DBA covered Plaintiffs' injuries. The district court certified its order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we granted KBR leave to appeal from the district court's order. The Plaintiffs

---

[6] *Id.* at 554-55 (describing Plaintiffs' fraud allegations).

[7] *Fisher v. Halliburton, Inc.*, 454 F. Supp. 2d 637, 638 (S.D. Tex. 2006).

[8] *Lane*, 529 F.3d at 554.

[9] The complaint also included causes of action under the Racketeer Influenced and Corrupt Organizations Act. The district court dismissed those claims in an order not at issue in these appeals.

No. 10-20202 c/w 10-20371

filed a conditional cross-petition in this court, urging that we hold that the DBA does not preempt the fraud in the inducement claim.

## II

In the proceedings below, KBR invoked the DBA's exclusivity provision in a Rule 12(b)(1) motion, claiming the provision deprived the district court of subject-matter jurisdiction over Plaintiffs' state-law causes of action. The district court treated KBR's motion as a motion for summary judgment and denied the motion after determining genuine issues of material fact exist as to whether the DBA covers Plaintiffs' injuries. On appeal, KBR asserts the district court erred when it treated KBR's motion as a motion for summary judgment. KBR stresses the importance of distinguishing between these two types of motions in this case because the district court premised its denial of KBR's motion on the existence of fact questions with respect to whether Plaintiffs' injuries fall within the coverage of the DBA. Had the district court properly treated its motion as a Rule 12(b)(1) motion, KBR argues, the court would have resolved those fact issues and could not have denied the motion simply because fact questions exist.[10]

We disagree with KBR's assertion that the district court erred by treating KBR's motion as a Rule 56 motion for summary judgment rather than a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. We do so because the applicability of the DBA's exclusivity provision, like the applicability of the LHWCA's exclusivity provision, presents an issue of preemption, not jurisdiction.[11] Federal preemption is an affirmative defense that a defendant

---

[10] *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981) ("Jurisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations. The unique power of district courts to make factual findings which are decisive of jurisdiction is, therefore, not disputed." (internal citations omitted)).

[11] *See Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001) (observing "[t]he LHWCA is a preemption defense"); *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 364-67 (5th Cir. 1995)

must plead and prove.[12] Unless the complaint itself establishes the applicability of a federal-preemption defense—in which case the issue may properly be the subject of a Rule 12(b)(6) motion[13]—a defendant should ordinarily raise preemption in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment.[14] We will review the district court's order denying KBR's Rule 12(b)(1) motion as an order denying KBR summary judgment.

## A

We ordinarily review a district court's grant of summary judgment de novo, applying the same standards as the district court.[15] As noted above, however, in this case we are reviewing a district court's denial of a summary judgment motion certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). "[O]ur appellate jurisdiction under § 1292(b) extends only to controlling questions of law . . . ."[16] Accordingly, "we review only the issue of law

---

(discussing preemptive effect of the LHWCA's exclusivity provision).

[12] *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit."); *Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof."); *see also Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) ("The party asserting federal preemption has the burden of persuasion.").

[13] *See Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (observing that dismissal under Rule 12(b)(6) may be appropriate "when a successful affirmative defense appears on the face of the pleadings").

[14] *See Mosely v. Bd. of Educ. of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006) (observing that the earliest possible time to consider an affirmative defense "would normally be after the answer has been filed, if it is possible to decide the issue through a Rule 12(c) motion for judgment on the pleadings").

[15] *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010) (citing *Allstate Ins. Co. v. Disability Servs. of the Sw., Inc.*, 400 F.3d 260, 262-63 (5th Cir. 2005)).

[16] *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 461 (5th Cir. 2005) (citing *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004)).

No. 10-20202 c/w 10-20371

certified for appeal," which in this case is whether the district court properly interpreted the scope of the DBA's coverage.[17]

## B

The DBA is a general reference statute that extends workers' compensation coverage under the Longshore and Harbor Workers' Compensation Act (LHWCA) to "employees of American contractors engaged in construction related to military bases in foreign countries, and to foreign projects related to the national defense whether or not the project is located on a military base."[18] As the United States observes in its amicus brief in this court, the DBA establishes a uniform, federal compensation scheme for civilian contractors and their employees for injuries sustained while providing functions under contracts with the United States outside its borders. The DBA provides compensation for "the injury or death of any employee engaged in any employment . . . under a contract entered into with the United States [or any sub-component thereof] . . . where such contract is to be performed outside the continental United States."[19] "[T]he compensation protocol provided by the LHWCA governs a claim under the DBA except to the extent the DBA specifically modifies a provision of the LHWCA. If the DBA provides a specific modification then the provisions of the DBA control."[20]

We have explained that the DBA "was adopted at the request of the Secretary of War in order to save the previous heavy expense of providing its contractors with insurance of such employees on the basis of tort liability and

[17] *Id.*

[18] *AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111, 1112 (5th Cir. 1991).

[19] 42 U.S.C. § 1651(a)(4).

[20] *AFIA/CIGNA*, 930 F.2d at 1112-13 (internal citations omitted).

No. 10-20202 c/w 10-20371

full accident insurance."[21]  Like the LHWCA and other workers' compensation statutes, the DBA represents a compromise between employees and their employers. "Employers relinquish[] their defenses to tort actions in exchange for limited and predictable liability,"[22] and "[e]mployees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail."[23]  Thus, the DBA, like the LHWCA, includes a provision making an employer's liability under the workers' compensation scheme exclusive.[24]  If an employee's injury is covered under the DBA, he is generally precluded from pursuing a tort claim against his employer to recover for the same injury.[25]

Here, KBR argues Plaintiffs' injuries are compensable under the DBA and Plaintiffs thus cannot proceed with their tort claims against KBR.  As the district court properly recognized, whether Plaintiffs' claims come within the DBA is resolved by determining whether Plaintiffs suffered an "injury" as that term is defined by the DBA through reference to the LHWCA.  The LHWCA provides:

---

[21] *O'Keeffe v. Pan Am. World Airways, Inc.*, 338 F.2d 319, 322 (5th Cir. 1964).

[22] *Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs*, 461 U.S. 624, 636 (1983).

[23] *Id.*; *see also Davila-Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000) ("The purpose of the Defense Base Act is to provide uniformity and certainty in availability of compensation for injured employees on military bases outside the United States.").

[24] *See* 42 U.S.C. § 1651(c).

[25] *See Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 52 (9th Cir. 1966) ("[T]he coverage provisions of the Defense Base Act clearly evidence the intent that the act shall afford the sole remedy for injuries or death suffered by employees in the course of employments which fall within its scope."); *cf. Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995) (holding plaintiff's claim under Texas's Deceptive Trade Practices Act preempted by the LHWCA's exclusivity provision); *Johnson v. Odeco Oil & Gas Co.*, 864 F.2d 40, 44 (5th Cir. 1989) (holding that the LHWCA preempts worker's negligence claim against his employer for injuries suffered on offshore oil rig during hurricane).

11

No. 10-20202 c/w 10-20371

The term "injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.[26]

After reviewing the briefs and arguments of the parties and amici, and the district court's order, we believe that the question of whether the DBA bars Plaintiffs from proceeding with their state tort claims against KBR turns on three issues. First, we will consider whether Plaintiffs' injuries were injuries "caused by the willful act of a third person directed against [Plaintiffs] because of [their] employment." Second, we will address whether, if Plaintiffs' injuries do fall within the scope of the DBA's coverage as the result of willful acts of third parties directed against them because of their employment, Plaintiffs can nevertheless proceed with their intentional tort claims against KBR under the theory that KBR knew the insurgent attacks were substantially certain to occur and failed to protect Plaintiffs from the attacks. Third, we will consider whether coverage of Plaintiffs' injuries under the DBA precludes Plaintiffs from pursuing their fraud claims against KBR.

**1**

We begin with the definition of "injury . . . arising out of and in the course of employment" as "an injury caused by the willful act of a third person directed against an employee because of his employment."[27] We read this definition of injury as encompassing four distinct elements in addition to the requirement that the injury arose out of and in the course of employment. There must (1) be a willful act; (2) by a third person; (3) directed against the employee because of his employment; (4) that causes the employee's injury. Here, the first two of

---

[26] 33 U.S.C. § 902(2).

[27] *Id.* (internal quotation marks omitted).

those elements are clearly satisfied. Insurgent attacks on KBR convoys no doubt qualify as willful acts by third persons. The questions we must resolve are whether the insurgent forces attacked Plaintiffs "because of [their] employment" and whether the insurgent attacks "caused" Plaintiffs' injuries for purposes of DBA coverage.

**a**

We first address the scope of the requirement that a third party act against an employee "because of his employment." As an initial matter, we note that in the typical case the question of whether a third party acts against an employee "because of his employment" will present a question of fact[28] residing outside of this court's jurisdiction over an interlocutory appeal under § 1292(b).[29] It is well established, however, that a question of law is presented when the facts of a case are undisputed and a reasonable person can draw only one plausible inference from those facts.[30] This is such a case, and, for the reasons below, we conclude the district court erred as a matter of law when it failed to determine that the insurgent attacks on Plaintiffs constituted the willful acts of third persons directed against Plaintiffs because of their employment.

---

[28] *Cf. Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 465 (5th Cir. 2005) (applying Mississippi's workers' compensation statute).

[29] *See La. Patients' Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005) (observing that under § 1292(b) we do not review whether a party has presented sufficient evidence to avoid summary judgment).

[30] *See Tanks*, 417 F.3d at 465 (applying Mississippi law and holding "if the facts surrounding the cause of an employment-related injury are undisputed, we will treat the issue as a legal one"); *cf. Boos v. AT&T, Inc.*, 643 F.3d 127, 132 (5th Cir. 2011) ("Although intent is often a question of fact, here, where the underlying facts are undisputed, the question is one of law."); *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 89-90 (5th Cir. 1989) (quoting *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1072-73 (5th Cir. 1986) (en banc)) ("Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts." (internal quotation marks and citations omitted)).

No. 10-20202 c/w 10-20371

As in any case involving the interpretation of a statute, we begin with the statute's language.[31] Section 902(2)'s requirement that a third party act against an employee "because of his employment" clearly indicates Congress's intent to require some connection between an injured employee's employment and a third party's assault on that employee. In this respect, the language represents Congress's recognition of the proposition that employees are generally entitled to workers' compensation for injuries caused by the intentional acts of third parties when there is a connection between the third-party assault and the conditions and character of the employee's occupation.

On this point we note that Congress patterned the LHWCA on the New York Workers' Compensation Law of 1922.[32] Although the New York law did not include a provision explicitly providing for the coverage of injuries caused by the willful acts of third parties,[33] New York cases from the period prior to the LHWCA's enactment consistently recognized coverage under New York's compensation scheme for such injuries.[34] New York courts rejected compensation claims, however, in cases in which the third party acted against the employee for purely personal reasons having no relationship to the employee's work. For example, in *Scholtzhauer v. C&L Lunch Co.*,[35] the Court

[31] *United States v. Rains*, 615 F.3d 589, 596 (5th Cir. 2010) (citing *Watt v. Alaska*, 451 U.S. 259, 265 (1981)) ("As in any case involving statutory interpretation, we begin by examining the text of the relevant statutes.").

[32] *See Potomac Elec. Power Co. v. Dir., Office of Workers' Comp. Programs*, 449 U.S. 268, 275 n.13 (1980).

[33] *See* N.Y. WORKERS' COMP. LAW § 2(7) (defining "injury" as "only accidental injuries arising out of and in the course of employment"; *Wager v. White Star Candy Co.*, 217 N.Y.S. 173, 175 (N.Y. App. Div. 1926).

[34] *See, e.g.*, *Knocks v. Metal Package Corp.*, 131 N.E. 741, 741-43 (N.Y. 1921); *In re Heitz*, 112 N.E. 750, 751-52 (N.Y. 1916); *Hellman v. Manning Sand Paper Co.*, 162 N.Y.S. 335, 336 (N.Y. App. Div. 1916).

[35] 134 N.E. 701 (N.Y. 1922).

of Appeals of New York held that an award under workers' compensation could not be made to the father of a woman who was killed by a coworker. The coworker, a black man, had invited the daughter to go out with him in the evening.[36] The daughter declined and remarked to another employee that "she would not go out with a negro."[37] Angered by her remarks, the coworker shot her with a pistol.[38] The Court of Appeals rejected her father's claim, observing that "[t]he only suggestion that the employment had any bearing on the injury was that the employment brought the two persons together."[39] The court concluded:

> The fact that the murder took place on the employer's premises was a mere incident. It might equally well have happened on the sidewalk in front of the building, or while the daughter was on her way home, or at any other place where Arthurs had chanced to meet her. Had Arthurs made the proposal to the daughter while she was away from the place of employment, and after her rejection of it had killed her, it could not with any reason be contended that a claim could arise under the Compensation Law.[40]

The "because of" requirement in § 902(2) is simply a codification of this principle: an employee is not entitled to compensation when a third party acts for purely personal reasons only coincidentally related to the employee's work.

Decisions by the few courts that have had the opportunity to interpret and apply § 902(2)'s "because of" requirement reinforce this conclusion. In *Maryland Casualty Co. v. Cardillo*,[41] the District of Columbia Circuit upheld the award of compensation under the District of Columbia's workers' compensation

---

[36] *Id.* at 702.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* (internal citation omitted).

[41] 107 F.2d 959 (D.C. Cir. 1939).

statute—which for many years, like the DBA, operated through reference to the LHWCA[42]—to an insurance collector who was abducted, robbed, and beaten to death. The court observed the evidence in the record supported the determination "that the assault and robbery were 'directed against' the employee because of his employment":

> Common sense and common knowledge tell us that when a known insurance collector has his collection equipment with him, at the end of the day, he appears to be carrying money, and that a man who appears to be carrying money is more likely to be attacked and robbed than another man. It follows that, if Najjum's insurance "book" gave notice that he was an insurance collector, his employment exposed him to a special risk. He was in fact abducted, robbed, and murdered by persons who recognized him by his "book" as an "insurance man."[43]

Similarly, in *Penker Construction Co. v. Cardillo*,[44] the District of Columbia Circuit upheld the award of compensation to the widow of an employee who was killed by a fellow coworker after the employee refused to pay the coworker a commission for finding him the job. The court observed the employee "was killed because he had employment for which he refused to pay a fee" and held the award of benefits was valid because the commissioner's findings were "equivalent to a finding that the injury was 'caused by the willful act of a third person directed against an employee because of his employment.'"[45]

On the other hand, in *Kirkland v. Director, Office of Worker's*

---

[42] *See Burns v. Dir., Office of Workers' Comp. Programs*, 41 F.3d 1555, 1558 n.4 (D.C. Cir. 1994) (observing that the District of Columbia Workman's Compensation Act of 1928, which was repealed in 1982, extended the provisions of the LHWCA to "the injury or death of an employee of an employer carrying on any employment in the District of Columbia").

[43] *Md. Cas. Co.*, 107 F.2d at 961.

[44] 118 F.2d 14 (D.C. Cir. 1941).

[45] *Id.* at 15.

*Compensation Programs*,[46] the District of Columbia Circuit upheld the denial of compensation in a case in which an administrative assistant for a company affiliated with the CIA was murdered during a robbery of his home.[47]  The court observed that "[n]othing regarding [the employee's] employment as 'an administrative assistant who prepared leave requests . . . and handled pilot problems' caused him to be murdered while being robbed by his wife's friend."[48] The court in *Kirkland* characterized the requirement as simply necessitating a "credible connection" between the third party's actions and the employment.[49] Together these cases suggest that an injury caused by a third party occurs "because of" the employee's employment so long as there is a credible causal nexus between the employment and the third party's act.

Turning to the instant case, the facts relevant to the issue of whether the Iraqi insurgents attacked Plaintiffs "because of" Plaintiffs' employment are undisputed.  There is no dispute, for example, that insurgents attacked Plaintiffs while Plaintiffs were on the job fulfilling a primary job responsibility: providing logistical support services to the United States Army by driving fuel trucks between United States' military installations in Iraq.  There is also no dispute that, in addition to attacking Plaintiffs, insurgents attacked a number of other

---

[46] No. 90-1267, 1991 WL 13948 (D.C. Cir. Feb. 7, 1991).

[47] *Id.* at *1.

[48] *Id.* at *2 (internal citation omitted).

[49] *Id.* at *1; *see also Fazio v. Cardillo*, 109 F.2d 835, 836 (D.C. Cir. 1940) ("[I]njuries sustained by an employee in a personal difficulty with another employee of the same employer, having no relation to the employment itself and in which there is no causal connection between the injury and the employment, are not compensable."); *cf. Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 465 (5th Cir. 2005) (quoting *Big "2" Engine Rebuilders v. Freeman*, 379 So. 2d 888, 890-91 (Miss. 1980)) ("The words 'because of,' like the other broadly-construed words of causation with the [Mississippi Workers' Compensation Act], such as 'arising out of,' express the necessity of a nexus between the injury and employment.  This nexus requires a showing of minimal causation: only a rational connection between employment and injury is necessary." (internal quotation marks, citations, and brackets omitted)).

targets, including coalition forces, Iraqi police stations, Iraqi citizens applying for positions with the Iraqi police, and other targets related to the government and infrastructure of Iraq. April 9, 2004, marked the first anniversary of the United States' presence in Baghdad, and the parties do not dispute that insurgent attacks on that day were wide-ranging.

In considering this evidence, the district court concluded that "ample evidence" existed from which one could infer that Plaintiffs "were assaulted not because they drove fuel trucks for [KBR], but because they were American on the first day of Arabeen, the one year anniversary of the United States' presence in Baghdad." In addition to pointing to the evidence that insurgents conducted attacks on people and facilities unaffiliated with KBR, Plaintiffs also note that, although they ordinarily drove white trucks with red markings in order to advertise their civilian status, they were driving green camouflaged vehicles at the time they were attacked. Plaintiffs appear to argue that insurgents could have mistaken them for members of coalition forces in Iraq, rather than KBR truck drivers, and that they therefore were not attacked because of their employment as truck drivers.

We cannot agree with the district court's assessment of the inferences that can be drawn from these facts, however, or with Plaintiffs' attempt to manufacture a fact question on this issue by pointing to insurgent attacks on other targets. The only plausible inference to be drawn from the facts in this case is the inference that Plaintiffs *were* attacked because of their employment. Indeed, Plaintiffs' case is the quintessential case of a compensable injury arising from a third party's assault. If we were to accept the district court's and the Plaintiffs' reasoning, the DBA would rarely apply to operations on foreign soil or those that support a war, even though the Act is expressly applicable to "projects or operations under service contracts and projects in connection with

18

the national defense or with war activities,"[50] and "war activities" is defined to include "activities directly relating to military operations."[51]   The argument could always be asserted that an employee was killed or injured not because of her employment, but because she was an American or because she was mistakenly thought to be a member of the armed forces rather than a civilian supporting the activities of the armed forces.  Congress did not intend such a construction of its enactment, and the words that it employed in setting forth its intent are not reasonably susceptible to such an interpretation.

The United States argues in its amicus brief, and we agree, that:

> [A] test dependent upon an evaluation of an enemy attacker's subjective intent or motivation is unworkable and would be impossible to apply.  Coverage under the DBA cannot properly depend upon a court's speculation regarding an unknown tortfeasor's motives, particularly during military operations, because the identity of insurgents and their precise motivations can never be determined with any degree of certainty.  Instead, the statutory requirement that an injury be "directed against an employee because of his employment" is meant only to exclude injuries willfully caused by third parties that obviously have nothing to do with their employment – that is, where it is clear that a tort was motivated by personal animosity rather than any nexus to employment.  Where, as here, it is at least plausible that the willful act of a third party was directed at an employee "because of his employment," no speculation regarding the motivations of that third party – who will often be unknown in the context of combat operations – it required or appropriate.  In short, the court erred in holding that the prong of the LHWCA defining "injury" to include the willful acts of third parties was not applicable to plaintiffs' injuries in this case.

This construction of the Act is buttressed by well-understood principles regarding workers' compensation schemes.  As a leading workers' compensation

---

[50] 42 U.S.C. § 1651(b)(1).

[51] *Id*. § 1651(b)(3).

treatise recognizes: "the clearest ground of compensability in the assault category is a showing that the probability of assault was augmented either because of the particular character of claimant's job or because of the special liability to assault associated with the environment in which he or she must work."[52]

We think it self-evident that driving trucks in Iraq in support of United States military operations augmented the probability that Plaintiffs would fall victim to an attack by insurgent forces, and that the character of Plaintiffs' employment—providing support services to an occupying military force—increased the likelihood that Plaintiffs would be targeted by forces opposed to the United States' presence in Iraq in 2004. Similarly, the environment in which Plaintiffs fulfilled their job duties—the roadways of Iraq—exposed Plaintiffs to the special risk of assault by insurgents. There is a reason, after all, that the contract between KBR and the military called for the military to provide force protection for KBR convoys: attacks by enemy insurgents were a risk attendant to the operation of those convoys.

Plaintiffs' failure to acknowledge the connection between their employment and the attacks of April 9 stems from their overly narrow conception of the nature of their employment. Plaintiffs were not simply employed as truck drivers; rather, Plaintiffs were driving trucks in support of the American coalition's rebuilding and security efforts in Iraq. All of the evidence pointed to by Plaintiffs and the district court establishes that insurgents were attacking targets related to those efforts. Under these circumstances, there can be no reasonable dispute that a clear connection exists between Plaintiffs' employment and the insurgents' attacks on Plaintiffs' convoys. Accordingly, the attacks occurred "because of" Plaintiffs' employment.

---

[52] 1-8 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 8.01[1][a], at 8-3 (2011).

No. 10-20202 c/w 10-20371

**b**

We next consider the requirement of the DBA that an employee's injuries be "caused by" the third party's acts. Plaintiffs appear to argue that their injuries were not caused by the insurgent attacks but by KBR's failure to halt convoy operations once it was aware that attacks on other convoys were occurring. Plaintiffs invoke the "familiar theory of tort law that permits recovery even though another actor or cause intervenes to be the direct cause of injury."[53] Plaintiffs point, for example, to the RESTATEMENT (SECOND) OF TORTS § 449, which provides: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."[54] In short, Plaintiffs ask us to approach the question of whether a third party has "caused" a worker's injuries for purposes of § 902(2) as we would approach the issue of proximate causation in a tort case involving an intervening act by a third party.

The obvious infirmity in Plaintiffs' argument is that the question of whether insurgents "caused" their injuries concerns the scope and effect of a congressionally enacted workers' compensation scheme. Even if KBR's actions or inactions were *a* cause of the death of, or injuries to, its employees, the

---

[53] *Lane v. Halliburton*, 529 F.3d 548, 566 (5th Cir. 2008).

[54] RESTATEMENT (SECOND) OF TORTS § 449. See also RESTATEMENT (SECOND) OF TORTS § 449, which states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

insurgents' actions constituted a cause as well. The attacks by insurgents and resulting injuries fall squarely within the statutory language "injury caused by the willful act of a third person directed against an employee because of his employment."[55] The DBA does not carve out from its coverage employees' injuries that would otherwise be covered by the Act as injuries resulting from a third party's intentional tort when there may be a concurring cause. In a case like this one, in which a third party's assault is a direct cause of the employee's injuries, we think it clear that the third party's act has "caused" the injury for purposes of coverage under the DBA.

**c**

Finally, in the interest of completeness, we will comment on an argument Plaintiffs' counsel raised at oral argument. Counsel suggested that the definition of injury as "an injury caused by the willful act of a third person directed against an employee because of his employment" is not applicable in a case in which the third party's acts have resulted in the death of the employee. The LHWCA clearly addresses and rejects this argument, however, when it provides that "[d]eath as a basis for a right to compensation means only death resulting from an *injury*."[56]

**d**

In sum, Plaintiffs here suffered injuries due to intentional torts committed by third parties because of Plaintiffs' employment. It is a matter of common sense that when insurgent forces in Iraq attack an Army-led fuel-supply convoy, the insurgents are attacking the convoy because of its role in supporting the Army's operations in that country. Plaintiffs, as drivers of trucks in such convoys, suffered injuries because of their role in those operations. The injuries

---

[55] 33 U.S.C. § 902(2).

[56] 33 U.S.C. § 902(11) (emphasis added).

qualify for coverage under the DBA.

Were we to construe the DBA as the Plaintiffs urge us to do, many of those injured by insurgent attacks in Iraq or other battle zones would be without a remedy. If the DBA did not apply because the worker was killed or injured by intentional acts of third parties because he was an American, and there was no negligence or other fault on the part of the employer, there would be no meaningful remedy. This, patently, is not what Congress intended.

**2**

We next consider whether Plaintiffs can proceed with their intentional-tort claims against KBR. We conclude the DBA bars Plaintiffs from pursuing such claims in this case.

It is a recurring theme in workers' compensation law that injuries arising from an employer's intentional tort do not fall within the scope of coverage for compensation purposes. A number of courts have held in the LHWCA context, for example, that an employee can sue his employer if the employer committed an intentional tort.[57] This circuit has not yet expressly recognized this intentional tort "exception" to coverage under the LHWCA,[58] but the cases so holding typically reason that an injury occurring as a result of an employer's intentional act is not "accidental" for purposes of the LHWCA's "accidental

---

[57] *See, e.g.*, *Sample v. Johnson*, 771 F.2d 1335, 1346 (9th Cir. 1985); *Roy v. Bethlehem Steel Corp.*, 838 F. Supp. 312, 316 (E.D. Tex. 1993) ("The employer can be sued under LHWCA, however, if he committed an intentional tort, i.e., genuine, intentional injury."); *Houston v. Bechtel Assocs. Prof'l Corp., D.C.*, 522 F. Supp. 1094, 1096 (D.D.C. 1981) (observing "[t]he courts have . . . carved out an exception to exclusive liability provisions where the injury inflicted is the result of an intentional act"); *Austin v. Johns-Manville Sales Corp.*, 508 F. Supp. 313, 316 (D. Me. 1981) ("Nothing short of a specific intent to injure the employee falls outside the scope of the [LHWCA]."); *Rustin v. District of Columbia*, 491 A.2d 496, 501 (D.C. 1985) (observing that the LHWCA's exclusivity provision "does not reach actions where the employer specifically intended to injure the employee").

[58] *See Johnson v. Odeco Oil & Gas Co.*, 864 F.2d 40, 44 (5th Cir. 1989) (assuming that LHWCA would not preclude a lawsuit by an employee for an intentional tort committed by his employer but ultimately finding it unnecessary to examine the LHWCA's scope).

injury" definition of injury.[59]  It has also been said that such an injury is not the result of a third party's willful act because employers are not third parties under the LHWCA.[60]  Importantly, the cases take a very narrow view of the types of intentional injury that lie outside of the LHWCA—the cases consistently require that the employer have had a specific intent or desire that the injury occur.[61]

The facts of this case do not fit the mold of the type of intentional tort that some courts heretofore have recognized as an exception to coverage under the LHWCA.  Plaintiffs have not challenged the district court's determination below that there is no evidence in the record "support[ing] the proposition that [KBR] desired that any of the drivers be injured or killed in an attack by Iraqi insurgents." Accordingly, this case does not require us to determine whether the DBA includes within its scope injuries caused by an employer's intentional assault of an employee with the specific desire to injure the employee.

Plaintiffs did argue to the district court below, however, that KBR committed an intentional tort by failing to act to protect Plaintiffs from "substantially certain" injury.  Plaintiffs observed in their briefing to the district

---

[59] *See Sharp v. Elkins*, 616 F. Supp. 1561, 1566 (D. La. 1985) ("[I]f an employer commits a willful act against its employee, then the injury to the employee apparently has not been caused by a 'third person', is not accidental and, thus, not compensable under the Act."); *cf. Grillo v. Nat'l Bank of Wash.*, 540 A.2d 743, 748 (D.C. 1988) ("[B]y definition, injuries to an employee that are *intended* by the employer fall outside of the [District of Columbia's Workers' Compensation Act's] exclusivity provisions, even though they are work-related, because they are nonaccidental.").  *See generally* 6-103 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 103.01, at 103-3 (2011) ("Several legal theories have been advanced to support [the employer intentional tort] exception to exclusivity.  The best is that the employer will not be heard to allege that the injury was 'accidental,' and therefore was under the exclusive provision of the workers' compensation act, when the employer intentionally committed the act.").

[60] *See Sharp*, 616 F. Supp. at 1565-66.

[61] *See id.* at 1565; *Bechtel Assocs. Prof'l Corp., D.C.*, 522 F. Supp. at 1096 ("Nothing short of a specific intent to injure the employee falls outside the scope of § 905(a). Absent such specific intent, the employee is foreclosed from maintaining a tort action against his employer.").

court, for example, that the RESTATEMENT (SECOND) OF TORTS defines "intent" to mean "that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."[62] Although Plaintiffs did not raise this argument in their briefing to this court, they did assert it during their oral presentations. According to Plaintiffs, the facts showed that KBR was substantially certain that Plaintiffs' convoys would be attacked and KBR failed to exercise its power to halt the convoy operations. We will consider Plaintiffs' argument in the interest of completeness. The question we confront is whether, even if an employee's injury falls within the scope of the DBA's coverage as the result of a willful act of a third party directed against the employee because of his employment, the employee can nevertheless proceed with an intentional-tort claim against his employer under the theory that the employer knew that the third party's assault was substantially certain to occur and failed to protect him from the assault.

We conclude that such an employee cannot proceed with an intentional-tort claim. The Supreme Court has "repeatedly admonished courts faced with technical questions arising under the LHWCA [that] 'the wisest course is to adhere closely to what Congress has written.'"[63] This sound advice applies equally, of course, to questions arising under the DBA.[64] As noted above, the DBA's plain text provides (through reference to the LHWCA) that compensable injury under the DBA "includes an injury caused by the willful act of a third person directed against an employee because of his employment." The DBA

---

[62] RESTATEMENT (SECOND) OF TORTS § 8A (1965).

[63] *Wash. Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 934 (1984) (quoting *Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 617 (1981)).

[64] *See United States v. Rains*, 615 F.3d 589, 596 (5th Cir. 2010) (citing *Watt v. Alaska*, 541 U.S. 259, 265 (1981)) ("As in any case involving statutory interpretation, we begin by examining the text of the relevant statutes.").

further provides that "[t]he liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be *exclusive and in place of all other liability* of such employer, contractor, subcontractor, or subordinate contractor to his employees . . . ."[65]  These provisions admit of no exception for cases in which an employee claims his employer was "substantially certain" that the employee would be assaulted by a third party because of his employment.  Rather, we think "the coverage provisions of the Defense Base Act clearly evidence the intent that the act shall afford the sole remedy for injuries or death suffered by employees in the course of employments which fall within its scope."[66]

Moreover, we agree with the reasoning of the United States' amicus brief that allowing an injured employee to recover from his employer under this theory of intentional-tort liability would inject into the DBA's workers' compensation scheme an element of uncertainty at odds with the statute's basic purpose: providing prompt relief for employees, and limited and predictable liability for employers.  Unlike a standard that focuses on an employer's specific desire and intent to harm an employee, the substantially certain standard is an objective standard belonging to a group of tort concepts that focuses on the probability that a certain result will occur.  As the Restatement observes, negligence, recklessness, and intent premised on substantial certainty are all points on a continuum of probability:

> If the actor knows that the consequences are certain, or

---

[65] 42 U.S.C. § 1651(c) (emphasis added).  See also 33 U.S.C. § 905(a), which provides:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

[66] *Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 52 (9th Cir. 1966).

substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282.[67]

Whether an employee's injury is "substantially certain" to occur thus depends on the probability that the injury will follow from the employer's acts.

The difficulties in using such a probabilistic standard to determine the scope of the DBA's exclusivity provision should be obvious. An employer, immune from tort liability for negligent or reckless conduct leading to an injury covered by the DBA, would have to conduct its business with an eye toward the possibility that it could face tort liability for actions that nevertheless cross the line from reckless conduct to conduct undertaken with the knowledge that harm to an employee is substantially certain to result. Consider this case as an example. At what point could we say that KBR had knowledge it was "substantially certain" that insurgents would attack Plaintiffs' convoys? Was it when KBR convoys were attacked in the days leading up to April 9? When KBR's security team alerted executives to the possibility of widespread violence on that day? When the first convoys to deploy on April 9 fell under attack? Is it even possible for an employer to be substantially certain that a third party will attack an employee? We think these questions illustrate the lack of predictability that would arise under the DBA's workers' compensation scheme if we allowed employees to proceed with tort claims under the "substantially certain" theory of liability even though their injuries qualify for coverage under the DBA as injuries resulting from the willful acts of third parties.

---

[67] RESTATEMENT (SECOND) OF TORTS § 8A cmt. b (1965).; *see also Vision Air Flight Serv., Inc. v. M/V Nat'l Pride*, 155 F.3d 1165, 1176 n.13 (9th Cir. 1998).

In sum, we hold that coverage of an injury under the DBA precludes an injured employee from recovering from his employer under a "substantially certain" theory of intentional-tort liability. On this point we believe it important to again clarify what is not at issue in this case. We are not confronting a situation in which the employer personally assaulted an employee. Nor are we confronting a situation in which an employer has conspired with a third party to inflict an assault on the employee. Nor does this case present a situation in which an employer has subjected his employee to the acts of a third party with the specific desire that the third party harm the employee. We see no reason to determine whether injuries arising in such scenarios would be covered by the DBA. Under the circumstances of this case, however, the DBA's remedy is exclusive.[68]

### 3

Finally, Plaintiffs argue that, even if the DBA covers their injuries and thus provides their exclusive remedy for those injuries, they should be allowed to proceed with their fraud claims against KBR. The Plaintiffs base their fraud claims on allegations that KBR, during its recruitment efforts, misled them to

---

[68] *Cf. Talik v. Fed. Marine Terminals, Inc.*, 885 N.E.2d 204, 212 (Ohio 2008) (holding that the LHWCA "preempts a claim under Ohio law alleging that the claimant's employer caused an injury through an intentional act committed with the belief that injury was 'substantially certain' to occur"); *Grillo v. Nat'l Bank of Washington*, 540 A.2d 743, 754 (D.C. 1988). The court in *Grillo* said:

> What appellants urge is not a clarification of the majority rule, but adoption of a new exception to the exclusivity provision of the WCA, in disregard of the coverage of injuries caused by a third-party, based on the evidence that NBW violated laws designed to assure the safety of the workplace and was aware that one of its employees had been killed by a robber under similar circumstances. Even those jurisdictions that have adopted the substantial certainty standard do not go so far when the injury is the result of an intentional act by a third person over whom the employer has no control. Thus the remedy must lie with the legislature.

*Grillo*, 540 A.2d at 754.

believe that they were noncombatants who would never be sent into combat. The district court, in its resolution of a separate case that was decided with Plaintiffs' cases, concluded that the DBA does prevent an employee from pursuing a fraud claim to recover damages for an injury covered by the DBA.[69]

We agree with the district court. Although Plaintiffs argue that their fraud claims accrued as soon as they entered into an employment relationship with KBR, this argument misses the point. The Plaintiffs do not seek rescission of their employment agreements. Rather, they seek damages for injuries that are compensable under the DBA. It is a generally accepted proposition of workers' compensation law that an employer's deceit that precedes and helps produce an otherwise compensable injury merges into that injury for purposes of compensation coverage.[70] There may be an exception to this rule when an employer deceives his employees with the specific intent and desire to cause the injury for which the employee seeks to recover,[71] but, as discussed above, this case does not present those facts. Accordingly, we believe the DBA bars Plaintiffs from using their fraud claims to recover for their injuries.

## III

Because we conclude that all of the Plaintiffs' state-law claims are barred by the DBA, we do not consider whether we have jurisdiction in this

---

[69] *Fisher v. Halliburton*, 703 F. Supp. 2d 639, 659 (S.D. Tex. 2010).

[70] *See* 6-104 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 104.03, at 104-8 to 104-9 (observing that, in cases in which the alleged deceit precedes and helps produce the injury, "a tort action has usually been found barred, since the deceit, so to speak, merges into the injury for which a compensation remedy is provided"); *see also Mergenthaler v. Asbestos Corp. of America*, 480 A.2d 647, 650 (Del. 1984) (citing *Gambrell v. Kan. City Chiefs Football Club, Inc.*, 562 S.W.2d 163 (Mo. Ct. App. 1978)) ("[D]eceit that precedes and helps produce an injury is held barred because it merges into the injury for which a compensation remedy is provided.").

[71] *See Mylroie v. GAF Corp.*, 440 N.Y.S.2d 67, 69 (N.Y. App. Div. 1981) (holding fraud claims barred by workers' compensation law because it was not alleged that employer committed fraud with the purpose and specific intent to cause plaintiff's injuries).

No. 10-20202 c/w 10-20371

interlocutory appeal to consider KBR's challenges to other orders of the district court, which include rulings regarding the political-question issue and other defenses.  Whether this case presents a nonjusticiable political question is a significant issue, particularly since KBR sought to have the role of the United States considered under section 33.004(I) of Texas Civil Practice and Remedies Code not as a party to the litigation, but as a responsible third party.  Chapter 33 of that Code allows a defendant to designate a responsible third party and, once the party is so designated and there is evidence sufficient to submit a question to the jury regarding the conduct of the party, requires the trier of fact to determine the percentage of responsibility for a plaintiff's harm attributable to the plaintiff, the defendant, any settling persons, and the responsible third party.[72]  The designation of a person as a responsible third party or a finding of fault against that person "does not by itself impose liability on the person" and "may not be used in any other proceeding . . . to impose liability on the person."[73]  Even parties "who are not subject to the court's jurisdiction or who are immune from liability to the claimant" can be designated responsible third parties under the statute.[74]  We do not, however, reach these issues.

**\*      \*      \***

For the above reasons, we VACATE the district court order on the issue certified for appeal in No. 10-20371 and REMAND the case with instructions to dismiss Plaintiffs' state tort claims.  We DISMISS KBR's appeal in No. 10-20202 as MOOT.

---

[72] TEX. CIV. PRAC. & REM. CODE § 33.003.

[73] *Id.* § 33.004(I).

[74] *In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 58 n.5 (Tex. App.—Houston [1st Dist.] 2005, no pet.).