# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2022

Lyle W. Cayce
Clerk

No. 21-20676

Kevin Cloyd; Nickalandra Witherspoon; Lucila Andrade,

*Plaintiffs—Appellants*,

*versus*

KBR, Inc.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No: 4:20-CV-3714

Before Smith, Clement, and Haynes, *Circuit Judges*.

Per Curiam:*

In 2020, Iran launched ballistic missiles at the U.S. military base in Al Asad, Iraq. Plaintiffs-Appellants Kevin Cloyd, Nickalandra Witherspoon, and Lucila Andrade were employed as civil contractors providing logistical support services for the U.S. military at Al Asad. Each suffered serious

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

injuries during the attack.  This appeal arises out of Plaintiffs' attempt to recover against KBR, Incorporated ("KBR"), the parent company of both the entity that employed Plaintiffs and the entity that contracted with the U.S. military to provide support services.

Plaintiffs sued KBR for negligence and gross negligence in state court. After KBR removed, the district court granted summary judgment in favor of KBR, determining that the Defense Base Act ("DBA") provides the exclusive remedy for, and therefore preempts, Plaintiffs' state law tort claims.  For the reasons set forth below, we conclude that the district court had jurisdiction over the action and AFFIRM.

## I.

KBR provides a wide range of professional services to the government, technology, and energy sectors globally.  As part of its regular business, KBR provides logistical support to the U.S. military through its various subsidiaries.  Two subsidiaries—Kellogg Brown & Root Services, Inc. ("KBRS") and Services Employees International, Inc. ("SEII")—are relevant here.  KBRS operates as a "project entity," and SEII acts as a "payroll entity."  SEII provides KBRS with staff members to aid KBRS in carrying out its various projects.

In 2008, the U.S. Army awarded KBRS the Logistics Civil Augmentation Program ("LOGCAP IV") contract.[1]  SEII provided KBRS with support contractors to assist with KBRS's obligations under LOGCAP IV.  Plaintiffs were among those contractors—Cloyd was an Assistant Fire

---

[1] LOGCAP IV is the fourth generation of a series of logistics support contracts used by the U.S. Army in a shift toward a smaller active-duty force and a greater reliance on private contractors.

No. 21-20676

Chief, Witherspoon was a Senior Security Officer, and Andrade was a Food Service Worker.

In 2019, tensions escalated between the United States and Iran. These tensions came to a head in January 2020, when the United States ordered a drone strike that killed Iranian General Qassem Soleimani. Iran threatened retaliation and days later launched ballistic missiles at Al Asad where several thousand troops and support contractors were based. Plaintiffs were stationed at Al Asad during the strike, and each suffered substantial injuries.

To recover for those injuries, Plaintiffs each initially filed Workers' Compensation claims with the U.S. Department of Labor. They then sued KBR in Texas state court. Their complaint alleged that KBR acted negligently by failing to evacuate Plaintiffs from Al Asad and failing to provide Plaintiffs with a safe workplace, particularly given the heightened risk of a strike due to escalating regional violence.

KBR removed the case to federal court on the basis of federal officer jurisdiction. Plaintiffs moved to remand, and KBR subsequently moved to dismiss on the grounds that Plaintiffs' claims were (1) precluded by the exclusivity provision of the DBA and (2) preempted by the combatant activities exception to the Federal Tort Claims Act. The district court denied both motions. As to the motion to dismiss, the court determined limited discovery was required to develop facts necessary to resolve the dispute. After the parties engaged in discovery, KBR moved for summary judgment. The district court then granted KBR's motion and dismissed Plaintiffs' claims against KBR. This appeal timely followed.

No. 21-20676

## II.

As a threshold matter, we must determine whether KBR properly removed this case to federal court.[2]  Invoking 28 U.S.C. § 1442(a)(1), KBR removed on the basis of "federal officer jurisdiction," which permits the United States, its officers, and "any person acting under that officer" to remove a civil action to federal court.  Removal under this section is unlike other removal doctrines: it is not "narrow" or "limited."  *Willingham v. Morgan*, 395 U.S. 402, 406 (1969); *Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017).  Indeed, the Supreme Court has consistently urged against "a narrow, grudging interpretation of § 1442(a)(1)."  *See, e.g.*, *Willingham*, 395 U.S. at 407; *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007); *accord Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021) ("Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." (quotation omitted)).

Because removal under § 1442(a) is expansive, defendants invoking the federal officer removal statute must show only that: (1) they are a "person" within the meaning of the statute; (2) they acted "pursuant to a federal officer's directions"; (3) they assert a "colorable federal defense"; and (4) there is a "'causal nexus' between the defendant's acts under color of federal office and the plaintiff's claims."  *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (en banc) (internal quotation marks and citation omitted).

---

[2] Plaintiffs' brief does not expressly challenge the district court's denial of its remand motion, but this is of no matter: "[s]ubject-matter jurisdiction can never be waived or forfeited."  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).  Because "no action of the parties can confer subject-matter jurisdiction upon a federal court," *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), we must examine the basis of the district court's jurisdiction, on our own motion, if necessary, *Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir. 1987) (per curiam).

The first element is easily satisfied—even though KBR is a corporation, it is nevertheless a "person" for § 1442(a) purposes. *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 452 (5th Cir. 2021) (confirming that a private company may remove if it is acting under an officer of the United States). The third element too is readily established—KBR asserts that Plaintiffs' claims are barred by the DBA, a colorable (and as we discuss later, successful) federal defense.

Primarily at issue then are the second and fourth elements—whether KBR "acted under" a federal officer's directives and whether Plaintiffs' claims are causally related to KBR's actions under "color of federal office." *See Latiolais*, 951 F.3d at 291. Because these elements are closely connected here, we address them together. *See id.* "The words 'acting under' are broad," so they must be "liberally construed." *Watson*, 551 U.S. at 147 (internal quotation marks and citation omitted). Thus, KBR is not required to "show that its alleged conduct was precisely dictated by a federal officer's directive." *St. Charles Surgical Hosp.*, 990 F.3d at 454. Rather, KBR must only demonstrate that the U.S. military "exert[ed] a sufficient level of subjection, guidance, or control" over it as a private actor. *Id.* at 455 (quotation omitted).

We conclude that KBR has satisfied these elements here. Plaintiffs' complaint seeks to hold KBR liable for failing to implement adequate security measures at Al Asad, provide Plaintiffs with a reasonably safe place to work, and evacuate Plaintiffs before the missile attack. Therefore, Plaintiffs' claims arise out of KBR's supposed "supervisory authority" over their workplace. But the record contains sufficient evidence to conclude that Plaintiffs' workplace, Al Asad, was under the control of the U.S. military. Indeed, it's undisputed that the U.S. military—not KBR—retained authority over all force protection measures for individuals on base, decided what security protocols to implement, dictated when contractors should take shelter, and

even determined what protective gear was necessary for personnel on base during a hostile attack. The U.S. military also assessed threat levels for the area daily and provided regular safety updates to contractors. Ultimately, the U.S. military made the decision to evacuate some individuals, but given that Al Asad still needed to be manned, decided to keep most personnel on base. Based on this evidence, it is apparent to us that each of the actions Plaintiffs seek to hold KBR responsible for were actually under the guidance and control of the U.S. military.

The fact that KBRS, rather than KBR, was the actual signatory to the LOGCAP IV contract does not alter our analysis. Plaintiffs direct us to no authority requiring a contractual relationship between a removing entity and a federal officer. Moreover, such a requirement would contradict our recent en banc holding recognizing that federal officer jurisdiction encompasses all actions "*connected* or *associated*[] with acts under color of federal office"—not merely those "*causally* connected." *See Latiolais*, 951 F.3d at 292. In any event, as articulated above, there is causation here: the entire basis of Plaintiffs' suit presupposes that KBR had discretion to implement safety and security measures—but those decisions were subject to the control of the U.S. military and, therefore, are sufficiently causally related.

At bottom, our conclusion is this: Al Asad is not a standard workplace environment that KBR could simply assert its own authority over without some kind of guidance from the U.S. military—it was an active military base in a war zone in a foreign country. Thus, the notion that the force protection measures giving rise to Plaintiffs' claims against KBR were not at least partially under the control of the U.S. military is untenable. Because Plaintiffs' claims implicate decisions under the U.S. military's "guidance and control," we conclude that the claims are sufficiently related to KBR's

actions under color of federal office.  *See Latiolais*, 951 F.3d at 291.  KBR's removal under § 1442(a) was thus proper.[3]

## III.

Satisfied of jurisdiction, we now turn to the merits to consider whether Plaintiffs can proceed with their state-law tort claims against KBR.  We review a district court's grant of summary judgment de novo.  *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We resolve all doubts and draw all reasonable inferences in favor of the nonmovant.  *Cates v. Dillard Dep't Stores, Inc.*, 624 F.3d 695, 696 (5th Cir. 2010).

The district court granted summary judgment in favor of KBR, concluding that Plaintiffs' claims were precluded by the DBA as providing

---

[3] We also note that *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) could provide a separate basis for federal jurisdiction.  Under *Grable*, even when a state action pleads only state law claims, federal jurisdiction may exist "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314 (2005)).

We recognize that Plaintiffs' negligence claims purport to assert only state law causes of action.  However, the theories supporting these negligence claims involve uniquely federal matters.  *See Grable*, 545 U.S. at 314.  Litigation of Plaintiffs' suit would necessarily require an analysis of the U.S. military's conduct and tactical decision-making inside a foreign war zone, which no doubt "implicat[es] important foreign policy concerns."  *See Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 543 (5th Cir. 1997).  The notion that state courts are solely able to address the issue of evacuating a federal military base in a foreign country is hard to fathom.  Given the federal interests at stake, Plaintiffs' claims are those that "sensibly belong[] in a federal court."  *Grable*, 545 U.S. at 315.  Accordingly, *Grable* could provide an independent basis for jurisdiction.

the exclusive remedy for their injuries. The DBA "extends workers' compensation coverage under the Longshore and Harbor Workers' Compensation Act (LHWCA) to employees of American contractors" on military bases in foreign countries. *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (internal quotation marks and citation omitted). It "establishes a uniform, federal compensation scheme for civilian contractors and their employees for injuries sustained while providing functions under" government contracts. *Id.* at 610. The DBA thus provides the exclusive remedy for covered employees—in other words, "[i]f an employee's injury is covered under the DBA, he is generally precluded from pursuing a tort claim against his employer to recover for the same injury." *Id.*

The only dispute here is whether KBR qualifies as Plaintiffs' employer for DBA purposes, such that the DBA provides the exclusive remedy for their claims against KBR. Plaintiffs argue that they were employed by SEII and contracted out to KBRS—two subsidiaries of KBR. Therefore, per Plaintiffs, KBR as the parent company, cannot also be their employer under the DBA.

We disagree. Admittedly, the DBA is silent on the issue of who qualifies as an "employer" for exclusivity purposes, and our court has not expressly opined on the issue. We have recognized, however, that two separate entities can both qualify as an individual's employer in the workers' compensation context. *See Oilfield Safety & Mach. Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248, 1254–55 (5th Cir. 1980). In *Oilfield Safety*, an individual was injured while working as both an employee of one company and as an independent contractor of another company. *Id.* Each company disclaimed being the individual's "employer" for workers' compensation purposes. *Id.* at 1251. But we determined the opposite—the relationship between each company and the individual was such that *both* qualified as his employer and both were required to provide compensation. *See id.* at 1254–55.

*Oilfield Safety* is relevant to our analysis here.  We recognize that KBR was not the entity that directly employed Plaintiffs—but that does not mean, as Plaintiffs argue, that KBR cannot *also* qualify as Plaintiffs' employer for DBA-exclusivity purposes.  Indeed, KBR was so closely intertwined with its subsidiaries in the actions giving rise to Plaintiffs' suit that we conclude it qualifies as Plaintiffs' employer under the DBA.

The record is rife with evidence supporting this conclusion.  KBR's regular business activities include providing essential combat support services to the U.S. military, and it does so via its various subsidiaries.  But there is very little, if any, distinction between the operations of KBR and the operations of its subsidiaries.  Rather, the record demonstrates that the entities worked as a "team" to facilitate these services—a team that Plaintiffs acknowledged they were joining.  Their employment letters stated that they would be joining KBR to support the LOGCAP IV projects in Iraq.  They received KBR's code of conduct, agreed to KBR's dispute resolution plan, were subjected to KBR's deployment requirements, and received access cards tied to their employment with KBR.  Importantly, Plaintiffs also agreed that their sole recourse for any injury against SEII or *its parent* would be governed by the DBA.  Finally, and perhaps most critically, at least two of the Plaintiffs' workers' compensation claims listed KBR as their employer.

Our conclusion is further cemented by the fact that Plaintiffs' entire theory of liability in this action treats KBR and SEII as essentially identical entities—they allege that KBR had authority and control over SEII employees and fault KBR for failing to evacuate them and otherwise keep them safe.  Indeed, their negligence claim asserts that KBR failed to implement proper safety measures, provide them with a safe place to work, properly supervise them, and adequately train them.  But these allegations presuppose that KBR owes some kind of employer-like duty to Plaintiffs.  Plaintiffs cannot have it both ways—they cannot fault KBR for failing to

protect them as their employer but simultaneously disclaim the existence of an employer-employee relationship for exclusivity purposes. *Compare Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993) (holding that an employer owes its employees a duty to "provid[e] a safe workplace."), *with Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 274 (Tex. 1984) ("[A] corporation [is not] liable for the obligations of its subsidiary" absent some "exceptional circumstances").

This conclusion accords with our decision involving similar corporate defendants in *Fisher*, 667 F.3d at 617. In that case, civil contractors employed by SEII brought tort claims against SEII, KBR, and various other KBR subsidiaries. *Id.* at 605–08. The district court determined that the claims against KBR and the other subsidiaries were barred by the DBA, even though SEII was the only "company specifically named on the plaintiffs' employment agreements." *Fisher v. Halliburton*, 703 F. Supp. 2d 639, 663 (S.D. Tex. 2010), *vacated on other grounds*, 667 F.3d at 622. Although we vacated that opinion on other grounds, we agreed with the district court that the claims were precluded by the DBA. It was immaterial in that case, as it is here, that the civil contractors were not directly employed by KBR. Rather, the record there reflected that the allegations established an employer-employee relationship between the parties, and so too, here.

To sum up, we conclude that the record evidence sufficiently demonstrates that an employer-employee relationship pursuant to the DBA and based on the allegations against KBR existed between KBR and Plaintiffs. Thus, the DBA provides the exclusive remedy for Plaintiffs' claims against KBR. Summary judgment was thus warranted.

No. 21-20676

Because we conclude that Plaintiffs' state law claims are barred by the DBA, we do not consider KBR's other arguments under the political question doctrine[4] or the combatant activities exception.

AFFIRMED.

---

[4] Although we recognize that the political question doctrine has jurisdictional tones, we need not address it as a threshold issue here because it is prudential in nature and does not determine whether jurisdiction can be exercised over the case in the first instance. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) ("Political questions are labeled 'nonjusticiable' because there is an undeniable difference between finding no federal jurisdiction at the outset of a case and declaring that a particular matter is inappropriate for judicial resolution only after some consideration of the merits."). As we conclude above, there is federal jurisdiction over this case. Whether the case invokes a political question implicates only whether the district court should have declined to exercise jurisdiction, not whether it had jurisdiction in the first instance. *See id.* Our decision to thus forgo the political question analysis and instead affirm the dismissal of Plaintiffs' claims based on the DBA accords with our decision in *Fisher*, 667 F.3d at 606.